**Nos. 23-1509, 23-1553**

IN THE

# United States Court of Appeals
### FOR THE FEDERAL CIRCUIT

ALIVECOR, INC.,
*Appellant,*

v.

UNITED STATES INTERNATIONAL TRADE COMMISSION,
*Appellee,*

APPLE INC.,
*Intervenor.*

(Caption Continued on Inside Cover)

On Appeal from the United States International Trade Commission,
No. 337-TA-1266, Administrative Law Judge Cameron R. Elliot

**CORRECTED BRIEF OF *AMICI CURIAE* MEDICAL DEVICE MANUFACTURERS ASSOCIATION, ALLIANCE OF U.S. STARTUPS & INVENTORS FOR JOBS, INNOVATION ALLIANCE, AND KHOSLA VENTURES IN SUPPORT OF APPELLEE THE UNITED STATES INTERNATIONAL TRADE COMMISSION AND AFFIRMANCE IN CASE NO. 23-1553**

JANUARY 23, 2024

DAVID A. BALTO
LAW OFFICES OF DAVID A BALTO
8030 ELLINGSON DRIVE
CHEVY CHASE, MD 20815
(202) 577-5424
david.balto@dcantitrustlaw.com
*Attorney for Amici Curiae, Manufacturers Association, Alliance of U.S Startups & Inventors for Jobs, Innovation Alliance, and Khosla Ventures*

APPLE INC.,

*Appellant,*

v.

UNITED STATES INTERNATIONAL TRADE COMMISSION,

*Appellee,*

ALIVECOR, INC.,

*Intervenor.*

## CERTIFICATE OF INTEREST

Pursuant to Fed. Cir. R. 47.4 and Fed. R. App. P. 26.1, counsel for *Amici Curiae* Medical Device Manufacturers Association, Alliance of U.S. Startups & Inventors for Jobs, Innovation Alliance, and Khosla Ventures certifies the following:

1.    Provide the full names of all entities represented by undersigned counsel in this case:

> **Medical Device Manufacturers Association; Alliance of U.S. Startups and Inventors for Jobs; Innovation Alliance; Khosla Ventures.**

2.    Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

> **None/Not Applicable.**

3.    Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

> **None.**

4.    List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities:

> **None**.

5. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

**None.**

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

**None.**

Respectfully submitted,

Date: January 23, 2024     By: */s/ David A. Balto*

DAVID A. BALTO
ATTORNEY AT LAW
8030 ELLINGSON DRIVE
CHEVY CHASE, MD 20815
(202) 577-5424
EMAIL: david.balto@dcantitrustlaw.com

*Attorney for Amici Curiae*
*Medical Device Manufacturers Association*
*Alliance of U.S. Startups & Inventors for Jobs*
*Innovation Alliance*
*Khosla Ventures*

# TABLE OF CONTENTS

**Page**

STATEMENT OF INTEREST OF *AMICI CURIAE* ........................................1

INTRODUCTION ....................................................................................4

SUMMARY OF THE ARGUMENT .........................................................5

ARGUMENT ..........................................................................................7

I.    CONGRESS GAVE THE ITC BROAD POWERS TO
       PROTECT DOMESTIC INDUSTRIES FROM UNFAIR
       COMPETITION CAUSED BY IMPORTATIONS THAT
       INFRINGE PATENTS ............................................................7

II.   APPLE'S ATTACKS ON THE ITC IGNORE CONGRESS'
       INTENT BEHIND SECTION 337 INVESTIGATIONS .......................11

III.  APPLE DISTORTS THE NATURE OF THE SECTION 337
       REMEDY ...........................................................................16

IV.   APPLE IGNORES THE STRONG PUBLIC INTEREST IN
       ENFORCING PATENTS TO PREVENT INFRINGING
       IMPORTATIONS .................................................................19

V.    APPLE MUST OVERCOME THE DEFERENTIAL
       STANDARD OF WHETHER THE COMMISSION
       VIOLATED THE APA..........................................................22

CONCLUSION .....................................................................................24

# TABLE OF AUTHORITIES

**Page**

*AliveCor, Inc. v. Apple Inc.*,
  WDTX-6-20-cv-01112 (May 6, 2021)..........................................................17

*Atlas Roofing Co., Inc. v. Occupational Safety and Health Review Comm'n*,
  430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977))..................................18

*Certain Baseband Processor Chips and Chipsets, Transmitter and Receiver (Radio) Chips, Power Control Chips, and Prods. Containing Same, Including Cellular Telephone Handsets*,
  Inv. No. 337-TA-543, Comm'n Op. (June 19, 2007) ...................................20

*Certain Digital Television Prods. and Certain Prods. Containing Same and Methods of Using Same*,
  Inv. No. 337-TA-617, 2009 WL 2598777, Comm'n Op.
  (Aug. 21, 2009) .............................................................................................19

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
  526 U.S. 687, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999) ...........................17

*eBay, Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)...................................................................6, 12, 14, 15

*Hyundai Elec. Indus. Co. v. U.S. Int'l Trade Comm'n*,
  899 F.2d 1204 (Fed. Cir. 1990)....................................................................23

*Kimble v. Marvel Entm't, LLC*,
  576 U.S. 446 (2015) .....................................................................................14

*MCM Portfolio LLC v. Hewlett-Packard Co.*,
  812 F.3d 1284 (Fed. Cir. 2015).....................................................................18

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*,
  463 U.S. 29 (1983) .......................................................................................23

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page**

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
138 S.Ct. 1365 (2018) ...................................................... 17, 18

*Philip Morris Prods. v. U.S. Int'l Trade Comm'n*,
63 F.4th 1328 (Fed. Cir. 2023) ..................................... 22

*Sealed Air. Corp. v. U. S. Int'l Trade Comm'n*,
645 F.2d 976 (1981) ...................................................... 23

*Spansion, Inc. v. U.S. Int'l Trade Comm'n*,
629 F.3d 1331 (Fed. Cir. 2010) ........................... 9, 13, 14

*Tegal Corp. v. Tokyo Electron Am., Inc.*,
257 F.3d 1331 (Fed. Cir. 2001) ................................... 17

*Viscofan, S.A. v. U.S. Int'l Trade Comm'n*,
787 F.2d 544 (Fed. Cir. 1986) ................................. 22, 23

*In re Vivint, Inc.*,
14 F.4th 1342 (Fed. Cir. 2021) ................................... 23

*William Beaumont Hosp. – Royal Oak v. Price*,
455 F.Supp.3d 432 (E.D. Mich. 2020) ....................... 14

## OTHER AUTHORITIES

5 U.S.C. § 551 ................................................................ 8

5 U.S.C. § 706 .............................................................. 14

19 U.S.C. § 1337 .................................................... 6, 8, 13

19 C.F.R. § 210.8 ......................................................... 13

19 C.F.R. § 210.12 ....................................................... 12

28 U.S.C. § 1295 ........................................................... 7

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page**

28 U.S.C. § 1659 ...................................................................................17

Federal Rule of Appellate Procedure 29 .............................................1

Federal Rule of Appellate Procedure 32 ...........................................25

134 Cong. Rec. H5520-04, 1988 WL 179966...................................8, 9

134 Cong. Rec. S10711-01, 1988 WL 174536 ................................8, 9

H.R.Rep. No. 100-576.............................................................................9

H.R.Rep. No. 100-40 (1987) ...................................................9, 10, 11

S.Rep. No. 100-71 (1987) ....................................................................10

U.S. Const., art. I, sec. 8, cls. 1, 18 ...................................................18

U.S. Const., art I, sec. 10, cl. 2 ..........................................................18

Seventh Amendment ....................................................6, 16, 17, 18

Omnibus Trade and Competitiveness Act of 1988,
    100th Cong., 2d sess., H.R. 4848, § 1341 (July 25–26, 1988).......................8

Omnibus Trade and Competitiveness Act of 1988,
    Pub. L. No. 100-418, § 1342(a)(3), 102 Stat. 1212–13
    (August 23, 1988)..........................................................................11

Tariff Act of 1930 § 337 .......................................................................8

Tariff Act of 1930, Pub.L. No. 71-361, 46 Stat. 590 .......................13

Trade Act of 1974, Pub. L. No. 93-618, § 201-203 ..........................7

Trade Act of 1974, Pub. L. No. 93-618, § 337..........................*passim*

# TABLE OF AUTHORITIES
### (*cont'd*)

**Page**

Trade Act of 1974, Pub. L. No. 93-618, § 171-175,
   88 Stat. 2009-2011 (January 3, 1975) ...........................................................7

Colleen V. Chien & Mark A. Lemley, *Patent Holdup, the ITC, and
the Public Interest*,
   98 Cornell L. Rev. 1 .......................................................................................12

**STATEMENT OF INTEREST OF *AMICI CURIAE***

The Medical Device Manufacturers Association ("MDMA") is a national trade association based in Washington, D.C., providing educational and advocacy assistance to innovative and entrepreneurial medical technology companies.[1] Since 1992, MDMA has advocated for smaller companies, playing a proactive role in helping to shape policies that impact medical device innovators. MDMA's mission is to promote public health and improve patient care through the advocacy of innovative, research-driven medical device technology.

Alliance of U.S. Startups & Inventors for Jobs ("USIJ") is a coalition of over 20 companies—startups, entrepreneurs, inventors and investors—all of which depend on stable and reliable patent protection as a foundational prerequisite for making long term investments of capital and time commitments to high-risk businesses developing new technologies. USIJ was formed in 2012 and is committed to promoting a strong intellectual property system that supports

---

[1] In accordance with Federal Rule of Appellate Procedure 29(a)(4)(D) and (E), MDMA, USIJ, Innovation Alliance, and Khosla Ventures state that Intervenor Appellant, AliveCor, Inc., and Appellee International Trade Commission consented to the fling of this brief, that Intervenor Cross Appellant, Apple, Inc. took no position and that no party's counsel in this matter authored this brief in whole or in part; no party or party's counsel contributed money intended to fund preparing or submitting this brief; and no person, other than the *amici curiae*, their members or their counsel, contributed money that was intended to fund preparing or submitting this brief.

innovation, investment, and breakthrough technologies that change our world.  USIJ's mission is to ensure that this system continues to thrive for the benefit of American startups and inventors, and most importantly, American leadership in science and technology.  USIJ collaborates with several other associations that are similarly concerned with the declining availability of U.S. patents essential to protect our country's most important inventions that will define the future of technology.

The Innovation Alliance is a coalition of research and development (R&D) based technology companies that believe that maintaining a strong patent system is critical to supporting innovative enterprises of all sizes.  The Innovation Alliance is committed to strengthening the U.S. patent system to promote innovation, economic growth, and job creation, and we support legislation and policies that help to achieve those goals.  Innovation Alliance member companies innovate across a wide range of industries, from audio compression, to wireless communications, to advanced video communication, to vehicle transmission and drive train technology, and semiconductor technology.  Despite the wide range of industries Innovation Alliance companies are involved in, each member shares a deep commitment to innovation and dissemination of their research efforts through patent licensing.  Innovation in these industries requires the expenditure of vast sums of money in R&D before an innovation can be commercialized.

Khosla Ventures is one of the leading venture capital firms in the world, making early-stage venture capital investments and providing strategic advice to entrepreneurs building companies with lasting significance.  Known for its strategic approach to early-stage investments, the firm focuses on a broad range of technology sectors and looks to invest in category defining companies across multiple industries, including consumer, enterprise, financial services, health, artificial intelligence, agriculture/food, sustainable energy, space, 3D printing, VR/AR and robotics.

The MDMA, USIJ, Innovation Alliance, and Khosla Ventures (collectively, "the *Amici*") are home to or investors in, American startups, entrepreneurs, and inventors whose livelihoods depend on the zealous protection of the intellectual property they create.  Because those innovators depend greatly on our nation's patent laws and the economic incentives embodied by those laws, *Amici* are concerned with the erosion of patent rights.  In this appeal, Apple promotes that erosion by attacking the legitimacy, and even the constitutionality, of the International Trade Commission ("ITC") and its ability to block importations that infringe patents pursuant to Section 337 of the Trade Act of 1974.  Since at least 1974, the ITC has played an important role through Section 337 investigations in protecting domestic industries by blocking unfair importations that infringe innovators' patents.  Many of Apple's attacks are not

specific to this appeal or the evidence before the Commission, but rather reflect Apple's disdain for the ITC generally and the remedies Congress authorized under Section 337.  Moreover, Apple's attacks on the ITC coincide with its recent entry into the medical device space with the importation of its Apple Watch.  Because *Amici* deeply value the ITC and how it protects domestic industries, they submit this brief as *amici curie* in support of the ITC in Appeal No. 23-1553.

## INTRODUCTION

The medical technology industry is a proud, innovative American success story—both for patients and this country's economy.  The United States is the world leader in manufacturing life-saving and life-enhancing treatments for patients, and medical device manufacturers are a vital engine for economic growth.  Medical device innovators' investments in intellectual property rights are a key driver in this domestic economic growth.  Congress and the ITC have long recognized the public's interest in enforcing these rights by blocking the importations of infringing articles made abroad.

Strong, consistently enforced intellectual property rights are necessary to protect and promote domestic innovation and the next generation of life-saving and life-enhancing technologies.  Those rights are especially important to early-stage participants in the medical device industry, who rely on investor funding.  Without strong intellectual property rights protecting these investments, including

from infringing articles made abroad, investors will no longer have the economic incentive to invest in patented technologies, and as a result, the public will be deprived of the industries' next major innovation.

Through its decision in this case, the ITC recognized the important public interest in this Section 337 investigation, including the need to maintain the incentives to invest in intellectual property and the development of the next generation of life-saving and life-enhancing innovations. These incentives would be eliminated if large companies like Apple were allowed to unfairly compete by persuading the ITC or this Court that because Apple's infringement is so massive, it is somehow in the public interest to allow it to continue. Apple's attacks on the ITC, if deemed persuasive, would diminish the intellectual property rights of smaller competitors and harm the strong public interest in upholding those rights.

## SUMMARY OF THE ARGUMENT

Apple's brief goes far beyond the record and issues that should be before this Court. Rather, Apple's arguments reflect a more general attack on the ITC and the power expressly given to it by Congress. Through Section 337, Congress authorized the ITC to issue remedial orders to address infringement of United States intellectual property rights by imported articles. As explained in detail below, in 1988, Congress amended section 337 to strengthen the enforcement of intellectual property rights to block infringing importations. Section 337

expressly provides that, if the ITC determines "that there is violation of this section [337], it **shall** direct that the articles concerned . . . be excluded . . . **unless**, after considering [the public interest factors,] it finds that such articles should not be excluded." 19 U.S.C. § 1337(d)(1) (emphasis added). Nothing supports Apple's general attack that the ITC has abdicated its responsibilities or exceeded its statutory power. Apple's appeal should be directed only to whether the ITC complied with the Administrative Procedure Act.

Also, nothing supports Apple questioning the legitimacy, and even the constitutionality, of the ITC and its proceedings. Apple distorts the ITC remedies to argue that the ITC is "likely" to be violating the Seventh Amendment by not providing a jury. But the ITC does not award relief at law in the form of money damages. Rather, Congress properly assigned to the ITC, a non-Article III tribunal, the power to investigate and adjudicate whether importations amount to an unfair trade practice because the imported articles infringe intellectual property rights.

Moreover, nothing supports Apple's assertion that the ITC is merely an "alternative forum for patent assertion." Nor do the statistics published by the ITC support the argument by Apple and its amici that patentees, particularly non-practicing entities, are flocking to the ITC to circumvent the equitable factors set forth in the Supreme Court's *eBay* decision.

Finally, Apple never acknowledges the public's interest in the enforcement of intellectual property rights. Rather, it argues the public interest justifies its infringing imports. But if Apple's reasons are deemed sufficient to justify an exemption from the ITC's remedial orders, such a result would seriously undermine and devalue patent rights and, as a result, any domestic industry practicing those rights.

## ARGUMENT

## I.    CONGRESS GAVE THE ITC BROAD POWERS TO PROTECT DOMESTIC INDUSTRIES FROM UNFAIR COMPETITION CAUSED BY IMPORTATIONS THAT INFRINGE PATENTS

The Federal Circuit has exclusive jurisdiction over final determinations of the ITC made pursuant to Section 337 and is quite familiar with the history and purpose of Section 337 investigations and Congress' efforts to strengthen the statute. *See* 28 U.S.C. § 1295(a)(6). As this Court knows well, in 1974, Congress overhauled Section 337 and authorized the ITC to issue remedial orders to address infringement of United States intellectual property rights by imported products. Trade Act of 1974, Pub. L. No. 93-618, §§ 171-175, 88 Stat. 2009-2011 (January 3, 1975). To support the Commission's independence, Congress granted the Commission, rather than the President, the authority to determine whether Section 337 had been violated and what relief should issue. Pub. L. No. 93-618, §§ 201-203. Any ITC determination was subject to the requirements of the

Administrative Procedure Act (APA).   Pub. L. No. 93-618, § 337(c); APA, 5 U.S.C. § 551 et seq.  Before granting any relief, the ITC had to consider the effect the relief might have on various public interest factors.  19 U.S.C. §§ 1337(d), (f).  The President would have 60 days to intervene and disapprove any ITC remedy for policy reasons.  Pub. L. No. 93-618, § 337(g).

Because of the increasing importance of intellectual property in the United States and the ever-growing international trade deficit America was facing, Congress again amended Section 337 in 1988 to strengthen the enforcement of those intellectual property rights as one of the actions it took to try and rectify said trade deficit.  *See* 134 Cong. Rec. H5520-04, 1988 WL 179966; 134 Cong. Rec. S10711-01, 1988 WL 174536.  Congress determined that "the existing protection under section 337 of the Tariff Act of 1930 against unfair trade practices is cumbersome and costly and has not provided United States owners of intellectual property rights with adequate protection against foreign companies violating such rights."  Omnibus Trade and Competitiveness Act of 1988, 100th Cong., 2d sess., H.R. 4848, § 1341 (July 25–26, 1988).  Thus, Congress amended section 337 "to make it a more effective remedy for the protection of United States intellectual property rights."  *Id*.

Specifically, the 1988 amendments to Section 337 eliminated the need for a patentee to show injury to a domestic industry or to show irreparable harm.  *See*

*Spansion, Inc. v. U.S. Int'l Trade Comm'n*, 629 F.3d 1331, 1358-59 (Fed. Cir. 2010) (explaining purpose of amendments); *see also* 134 Cong. Rec. H5520-04, 1988 WL 179966; 134 Cong. Rec. S10711-01, 1988 WL 174536.   Congress determined that proof of infringement by the imported articles was sufficient to presume injury, and thus the patentee did not need to prove injury.  *See* H.R.Rep. No. 100-576, at 633, 1988 U.S.C.C.A.N. 1547, 1666 (1988) (Conf. Rep.) (bill "removes the requirement to prove injury . . . with regard to certain intellectual property rights cases involving patents").

The House Committee on Ways and Means recognized that:

> unlike dumping or countervailing duties, or even other unfair trade practices such as false advertising or other business torts, the owner of intellectual property has been granted a temporary statutory right to exclude others from making, using, or selling the protected property.  The purpose of such temporary protection, which is provided for in Article I, Section 8, Clause 8 of the United States Constitution, is "to promote the Progress of Science and Useful Arts, by securing for limited Times to Authors and Inventors the exclusive Rights to their respective Writings and Discoveries."

6 H. Rep. No. 100-40 (1987), 156.

The resulting bargain with the inventor creates a public interest in patent protection, thus making infringement itself an injury:

> In return for temporary protection, the owner agrees to make public the intellectual property in question.  It is this trade-off which creates a public interest in the enforcement of protected intellectual property rights.  Any sale in the United States of an infringing product is a sale that rightfully belongs only to the holder or licensee of that

> property. The importation of any infringing merchandise derogates
> from the statutory right, diminishes the value of the intellectual
> property, and thus indirectly harms the public interest.

*Id*.; *see also* S.Rep. No. 100-71, at 128 (1987) ("The fundamental purpose of the

amendments made by section 401 is to strengthen the effectiveness of section 337

in addressing the growing problems being faced by U.S. companies from the

importation of articles which infringe U.S. intellectual property rights."); *id*. at

129 ("The Committee does not intend that the ITC, in considering the public

health and welfare, or the President, in reviewing the ITC's determination on

policy grounds, will reintroduce these requirements."). Contrary to the arguments

made by Apple and its amici, nothing in the statute limits the ITC remedies to

foreign-based respondents. Apple Br. at 2-3 (referring to Apple as an American

company); Brief of *Amicus Curiae* Computer & Communications Industry

Association at 6-10, 17. Rather, the focus is on the imported articles, even when

imported by U.S.-based companies.

In addition, Congress recognized that non-manufacturing industries that

create and exploit intellectual property should also have the ability to establish a

domestic industry and obtain relief under the statute. For the first time, Congress

codified the criteria for establishing a domestic industry—significant investment

in plant and equipment and significant employment of labor or capital—and

expanded the criteria by allowing a complainant to satisfy domestic industry by

showing "substantial investment in [the product's] exploitation, including engineering, research and development, or licensing." Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, § 1342(a)(3), 102 Stat. 1212–13 (August 23, 1988).

The 1988 amendments show Congress' intent to broaden access to section 337. Congress balanced that decisive action with limits inherent in the domestic industry requirement, namely to "preclude holders of U.S. intellectual property rights who have no contact with the United States other than owning such intellectual property from utilizing Section 337." 2 H. Rep. No. 100-40 (1987), 156–57.

## II.    APPLE'S ATTACKS ON THE ITC IGNORE CONGRESS' INTENT BEHIND SECTION 337 INVESTIGATIONS

Apple recognizes that Congress has given the ITC "powerful" remedies to protect domestic industries from infringing imports. Apple Br. at 2 ("The Commission's exclusionary authority is a powerful remedy meant to protect American industry from unfair importation practices.") But Apple pejoratively calls those powers "extreme" and "sweeping" to presume that the Commission repeatedly acts beyond its statutory authority. *Id.* at 35 ("clear statutory overreach"). It argues as if the ITC frequently grants relief automatically. *Id.* at 86. Indeed, Apple continues that the "Commission has long since abdicated its

statutory obligation to protect the American public, not just patent owners." *Id.* As support, it points out that the Commission has declined to exclude products found to infringe in only three investigations. Apple Br. at 87. Citing a law review article, Apple also accuses the ITC of willingly "rubber-stamping" injunctive relief, fostering patent holders to use Section 337 to "achieve holdup." *Id.*[2]

Apple's disdain for the ITC could not be clearer. Rather than focus on the evidence and the findings made by the ITC *in this investigation*, Apple takes broad swipes at the Commission and attacks its legitimacy. But these broad accusations are unfair and do not pass any scrutiny.

Complainants must make a detailed showing before the ITC institutes a Section 337 investigation. 19 C.F.R. § 210.12(a). That detailed showing includes

---

[2] The "holdup" allegedly occurs when a patentee uses the injunction threat to obtain settlement money well beyond the value of the patent. *See* Colleen V. Chien & Mark A. Lemley, *Patent Holdup, the ITC, and the Public Interest*, 98 Cornell L. Rev. 1 ((2012). This article expounds upon the scenario Justice Kennedy discussed in his concurrence in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 395-97 (2006). That scenario is when firms "use patents not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees" and then use injunctions as "a bargaining tool to charge exorbitant fees to companies that seek to buy licenses to practice the patent." *Id.* The article proposes ways the ITC can modify its remedies in such cases which, it its view, would better accommodate the public interest. The article cites no data to show such holdups at the ITC.

a statement as to how the ITC's remedial orders, such as an exclusion order, would be in the public interest. 19 C.F.R. § 210.8(b). Failure to make these showings at the outset would prevent any investigation from proceeding. After the ITC conducts a full investigation, finds infringement and a Section 337 violation, and considers the public interest factors, it is unsurprising the ITC routinely issues exclusion orders under the legal framework set out by Congress. This Court has recognized that the "legislative history of the amendments to Section 337 indicates that Congress intended injunctive relief to be the normal remedy for a Section 337 violation . . .." *Spansion,* 629 F.3d at 1358. First, this Court observed that in passing the Tariff Act of 1930, Pub.L. No. 71-361, 46 Stat. 590, Congress eliminated the monetary remedy for intellectual property import violations, representing a legislative determination that an injunction is the only available remedy for violations of Section 337. *Id.* Second, as discussed above, the Court pointed to the 1988 amendments as removing the need to prove either injury to a domestic industry or irreparable harm. *Id.* at 1359. As a result, Section 337 expressly mandates the issuance of remedial orders: If the ITC determines "that there is violation of this section [337], it ***shall*** direct that the articles concerned . . . be excluded . . . ***unless***, after considering [the public interest factors,] it finds that such articles should not be excluded." 19 U.S.C. § 1337(d)(1) (emphasis in *Spansion*). Unsurprisingly, as this Court observed in *Spansion*, all three cases

where the ITC denied an exclusion order despite finding a Section 337 violation occurred before the 1988 amendments. *Spansion*, 629 F.3d at 1360.

The ITC's consistent approach provides certainty to U.S. innovators, while implementing the will of Congress to broaden access to Section 337. Consistent decision making is vital to reliance interests in commerce and avoids the arbitrary and capricious decision making forbidden by statute. *See* 5 U.S.C. § 706(2)(A); *William Beaumont Hosp. – Royal Oak v. Price*, 455 F.Supp.3d 432, 447 (E.D. Mich. 2020) ("The [Administrative Procedure Act] is structured to ensure predictability and protect reliance interests . . . ."); *see also Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 455 (2015) (consistent decision making is a "foundation stone of the rule of law" because it provides predictability and respects reliance interests).

Apple's reference to the Supreme Court's decision in *eBay* to suggest that the ITC should examine all of the equitable factors governing district courts also flouts precedent and Congressional intent. Apple Br. at 87. In *Spansion*, the Federal Circuit held that the four-factor test for injunctive relief from *eBay* "does not apply to Commission remedy determinations under Section 337." Apple Br. at 87. Apple ignores this precedent. *Id*. And its amici argue as if Congress intended for *eBay* to apply to the ITC. Brief of *Amicus Curiae* Computer & Communications Industry Association at 19-20. But the 1988 amendments

discussed above eliminated the need for the patentee to show irreparable harm, one of the *eBay* factors.

Patent holders, specifically non-practicing entities, have not been flocking to the ITC, as Apple and its amici suggest. Apple Br. at 87; Brief of Computer & Communications Industry Association as *Amicus Curiae* at 17-18; Brief of Unified Patents, LLC as *Amicus Curiae* at 6. Published statistics from the ITC show that, since 2006, the number of new Section 337 complaints, including ancillary proceedings, have ranged between 33 and 82 per year.[3] This pales in comparison to the roughly 4000 patent infringement complaints filed annually in the district courts.[4] Moreover, the ITC statistics show that, of all the Section 337 Complaints filed, only about 18% of the ITC investigations were filed by non-practicing entities.[5] In contrast, each year non-practicing entities file the majority of patent infringement complaints in district courts.[6] This is logical because in

---

[3]https://www/usitc.gov/intellectual_property/337_statistics_number_new_completed_and_active.htm.

[4] *See* https://www.unifiedpatents.com/insights/2023/1/4/2022-patent-dispute-report.

[5]https://www.usitc.gov/intellectual_property/337_statistics_number_section_337_investigations.htm.

[6]  *See*  https://www.unifiedpatents.com/insights/2023/1/4/2022-patent-dispute-report (reporting that nearly 60% of all patent litigation in 2022 stemmed from non-practicing entities, consistent with a 7-year average); *see also*

the ITC, to exclude the importation of foreign infringing articles, the patentee must prove a domestic industry practicing the asserted patent. The district courts have no such requirement.

### III.  APPLE DISTORTS THE NATURE OF THE SECTION 337 REMEDY

The ITC is not merely another "alternative forum for patent assertion" as Apple argues. Apple Br. at 1. The ITC under Section 337 focuses on unfair trade practices caused by imported articles, and its remedies are directed to blocking imported articles. Unlike the district court, the ITC does not adjudicate domestic acts of infringement and past damages, and it cannot award any money damages. Indeed, Apple can avoid the ITC remedies by simply manufacturing its Apple Watch in the United States.

Apple's attacks on the legitimacy of the ITC and its questioning of the constitutionality of the ITC rest on distorting the ITC remedy. That is best shown by Apple's argument that the ITC may be violating the Seventh Amendment by not using a jury to find facts in its investigations. Apple Br. at 34-35. But the Seventh Amendment applies only to civil actions at common law that are legal in nature; that is, where money damages are sought. It has no applicability to

---

www.npe.law.stanford.edu (reports on number of filings by non-practicing entities).

injunctions, and certainly not to exclusion orders administered by the ITC.  *See, e.g.*, *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719, 119 S. Ct. 1624, 1643, 143 L. Ed. 2d 882 (1999) (citing cases) ("[i]t is settled law that the Seventh Amendment does not apply" to suits seeking only equitable relief); *Tegal Corp. v. Tokyo Electron Am., Inc.*, 257 F.3d 1331 (Fed. Cir. 2001) (no right to jury when only remedy sought is injunctive relief);

Apple invokes *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S.Ct. 1365 (2018), to make its Seventh Amendment argument.  Apple Br. at 34-35.  As support, Apple parenthetically quotes *Oil States* stating that the Supreme Court did not decide whether "patent matters, such as infringement actions, can be heard in a non-Article III forum." *Oil States*, 138 S.Ct. at 1379. But ITC proceedings are not infringement actions, and do not involve any monetary award.[7]  Moreover, Apple ignores where *Oil States* dismisses the Seventh Amendment argument and where the Supreme Court specifically recognizes that "when Congress properly assigns a matter to adjudication in a

---

[7] The private parties on this appeal do have a civil action for patent infringement pending in the district court, which has been stayed under 28 U.S.C. Section 1659(a). *AliveCor, Inc. v. Apple Inc.*, WDTX-6-20-cv-01112 (May 6, 2021) (Order staying case pending institution of and/or final determination in parallel ITC matter).

non-Article III tribunal, the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder." *Oil States*, 138 S.Ct. at 1379 (citations and internal quotations omitted). Through Section 337, Congress properly assigned to the ITC the power to adjudicate whether an importer has engaged in an unfair trade practice by importing articles that infringe patents. U.S. Const., art I, sec. 10, cl. 2 (Import-Export Clause giving Congress authority over international commerce); *see also* U.S. Const., art. I, sec. 8, cls. 1, 18. (Congress' authority to "lay and collect Taxes, Duties, Imposts and Excises" and to "make all Laws which shall be necessary and proper for carrying into Execution" these powers). Apple's disdain with Congress' assignment of that authority to the ITC does not render the ITC an improper forum for the adjudication of trade disputes. *See MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1293 (Fed. Cir. 2015) ("Congress is not required by the Seventh Amendment to choke the already crowded federal courts with new types of litigation or prevented from committing some new types of litigation to administrative agencies with special competence in the relevant field.") (*citing Atlas Roofing Co., Inc. v. Occupational Safety and Health Review Comm'n*, 430 U.S. 442, 455, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977)).

Because Apple's arguments rest on distorting the ITC remedy and the Supreme Court's opinion in *Oil States*, the Court should reject Apple's Seventh

Amendment arguments.  Apple has not shown any "clear statutory overreach" as it claims, but appears to simply disagree with the statutory framework authorizing the ITC to make Section 337 determinations.  Apple Br. at 35.

## IV.   APPLE IGNORES THE STRONG PUBLIC INTEREST IN ENFORCING PATENTS TO PREVENT INFRINGING IMPORTATIONS

The ITC considered the four public interest factors: (1) the public health and welfare; (2) competitive conditions in the U.S. economy; (3) the production of like or directly competitive articles in the U.S.; and (4) U.S. consumers. Comm'n Op. at 52.  In its thirty-page analysis on the public interest, the Commission evaluated the parties' arguments, including lengthy expert declarations submitted by Apple, and acknowledged each of the thirteen public interest submissions made of record.  *Id.* at p. 52-54.  The ITC also received input from the Office of Unfair Imports Investigations, who agreed that an exclusion order was the appropriate remedy.  Comm'n Op. at p. 48-50.  Instead of acknowledging this record, it appears Apple has a much broader goal in mind, namely to undermine the authority of the ITC and the public's interest in protecting intellectual property rights.

Apple's brief never acknowledges the public's interest in the enforcement of intellectual property rights.  As the Commission has observed, "the public interest favors the protection of intellectual property."  *Certain Digital Television*

*Prods. and Certain Prods. Containing Same and Methods of Using Same*, Inv. No. 337-TA-617, 2009 WL 2598777, Comm'n Op., at 9 (Aug. 21, 2009) (internal quotation marks and citation omitted). The ITC should deny relief only where "the statutory public interest concerns are so great as to trump the public interest in enforcement of intellectual property rights." *Certain Baseband Processor Chips and Chipsets, Transmitter and Receiver (Radio) Chips, Power Control Chips, and Prods. Containing Same, Including Cellular Telephone Handsets*, Inv. No. 337-TA-543, Comm'n Op., at 153-154 (June 19, 2007).

The ITC's remedies are an important tool to protect domestic medical device innovators and manufacturers from unfair competition from foreign-made articles. These remedial orders protect U.S. innovators from exactly the type of unfair competition occurring here—the importation of Apple Watches from foreign countries that infringe multiple U.S. patents.

Certain Apple public interest arguments, if accepted, would greatly undermine patent rights. For example, Apple argues that, because its infringement through the Apple Watch is so widespread, and so many existing customers rely upon the Watch, it should be excused from its infringement and may continue importing additional infringing products. Apple Br. at 95. This logic would reward the more pervasive infringer and would make poor public policy. Apple is the world's wealthiest company with a multi-trillion dollar

market capitalization.[8]   The sheer magnitude of its infringement should not exempt it from the consequences of its decision to manufacture infringing products outside of the United States.   The ITC's enforcement of intellectual property rights should not depend on the size of the alleged infringer or its success in selling foreign-made products that misappropriate intellectual property developed by others.   Permitting Apple to continue its importation of infringing articles because it has already imported and sold so many of those articles would stifle domestic innovation.

Apple also argues that, because its Watch contains many other noninfringing features, while the patent covers only one feature, it is in the public interest to allow Apple's importation.   Apple Br. at 87.   Again, this argument, if accepted, would seriously undercut the value of the patent right.   Products frequently have many features.   But a product with multiple features should not lessen the value of the intellectual property covering the infringing feature.

Apple also complains that it was unable to fully develop its public interest arguments because the ITC did not delegate this issue to the ALJ.   Apple Br. at

---

[8] Zachary Snowdon Smith, *Apple Becomes 1st Company Worth $3 Trillion—Greater Than The GDP Of The UK*, Forbes (Apr. 14, 2022, 2:05 PM) https://www.forbes.com/sites/zacharysmith/2022/01/03/apple-becomes-1st-company-worth-3-trillion-greater-than-the-gdp-of-the-uk/?sh=358cb32d5603.

94.  Apple ignores the opportunities it took advantage of to present public interest evidence at multiple points in this investigation and omits that the ITC record included public interest submissions from all parties, including OUII, lengthy expert declarations, and numerous third-party submissions.  Apple's procedural complaints with the ITC distort the record and do not demonstrate any defects in the ITC's fact-finding process.

### V.    APPLE MUST OVERCOME THE DEFERENTIAL STANDARD OF WHETHER THE COMMISSION VIOLATED THE APA

Apple's appeal should be limited to showing that the ITC made findings that lacked substantial evidence or acted arbitrarily or capriciously in violation of the APA.  Apple's broad attacks against the ITC should not excuse Apple from importing infringing articles where the ITC found an exclusion order would serve the public interest.

Apple ignores that the ITC has broad discretion in selecting the form, scope, and extent of its remedial orders, and judicial review of its choice of remedy necessarily is limited.  *See Philip Morris Prods. v. U.S. Int'l Trade Comm'n*, 63 F.4th 1328, 1339-40 (Fed. Cir. 2023) (citing *Viscofan, S.A. v. U.S. Int'l Trade Comm'n*, 787 F.2d 544, 548 (Fed. Cir. 1986).  When analyzing the ITC's remedy determinations, this Court "will not interfere except where the remedy selected has no reasonable relation to the unlawful practices found to exist." *Viscofan*, 787

F.2d at 548. "[I]f the Commission has considered the relevant factors and not made a clear error of judgment, [this Court] affirm[s] its choice of remedy." *Hyundai Elec. Indus. Co. v. U.S. Int'l Trade Comm'n*, 899 F.2d 1204, 1209 (Fed. Cir. 1990).

The deference given to the ITC's remedial analysis is a product of its existence as an expert body on trade and commerce. Judicial review "extends no further than to ascertain whether the Commission made an allowable judgment in its choice of the remedy." *Viscofan*, 787 F.2d at 548 (quotations omitted); *see also Sealed Air. Corp. v. U. S. Int'l Trade Comm'n,* 645 F.2d 976, 989 (1981) ("[I]t is not the function of a court to substitute a different remedy of its own design for that chosen by the ITC, or to substitute its view of the public interest for that of the ITC.").

To find an agency action arbitrary and capricious, the decision must be "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983); *see also In re Vivint, Inc*., 14 F.[4th] 1342, 1352-53 (Fed. Cir. 2021) ("Agency action that departs from established precedent without a reasoned explanation [is] arbitrary and capricious.") (citations and quotations omitted). That should be the focus of Apple's brief. Its rhetoric attacking the legitimacy of the ITC does nothing but cloud the real issues before

the Court, namely whether the ITC complied with the APA in issuing its remedy under Section 337.

## CONCLUSION

The MDMA, USIJ, Innovation Alliance, and Khosla Ventures respectfully submit that the ITC plays an important role in preventing unfair importations, and its remedies are a critical attribute of the intellectual property right. Apple's general attacks on the legitimacy of the ITC are unwarranted. Apple's appeal should be limited by the APA, and thus Apple should be arguing only whether substantial evidence supports the ITC's findings and whether the ITC acted arbitrarily and capriciously.

Respectfully submitted,

Date: January 23, 2024

By: */s/ David A. Balto*
DAVID A. BALTO
ATTORNEY AT LAW
8030 ELLINGSON DRIVE
CHEVY CHASE, MD 20815
(202) 577-5424
EMAIL: david.balto@dcantitrustlaw.com
*Attorney for Amici Curiae*
*Medical Device Manufacturers Association*
*Alliance of U.S. Startups & Inventors for Jobs*
*Innovation Alliance*
*Khosla Ventures*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains 5,017 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.


Date:  January 23, 2024          By: */s/ David A. Balto*
                                 DAVID A. BALTO
                                 ATTORNEY AT LAW
                                 8030 ELLINGSON DRIVE
                                 CHEVY CHASE, MD 20815
                                 (202) 577-5424
                                 EMAIL: david.balto@dcantitrustlaw.com

                                 *Attorney for Amici Curiae*
                                 *Medical Device Manufacturers*
                                 *Association*
                                 *Alliance of U.S. Startups & Inventors for*
                                 *Jobs*
                                 *Innovation Alliance*
                                 *Khosla Ventures*